BOUDETTE & COMPANY, INC. *vs.* ANACONDA WIRE & CABLE COMPANY.

MARCH 2, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is an action of assumpsit brought for breach of warranties with respect to certain field coils purchased from the defendant by the plaintiff for use in its manufacture of radio loud speakers.   The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the defendant.   .The plaintiff thereupon moved for a new trial.   This motion was denied by the trial justice and the plaintiff duly excepted to the denial.

The case is now before this court on plaintiff's bill of exceptions, containing the above exception and several others taken during the course of the trial, particularly to certain portions of the charge to the jury and to the refusal of the trial justice to grant certain of the plaintiff's requests to charge.   These exceptions, together with one other exception to a ruling admitting certain evidence of the use, without complaint, by another company of field coils like those sent to plaintiff, are the only exceptions which the plaintiff relied on in its brief and argument before us, all others being expressly waived.

Upon consideration of the several contentions made by the parties in their briefs and arguments, it appears to us that the case may be decided on a single issue.   But before stating the conclusion to which we have come, a brief statement of the facts as we find them will tend to make that issue clear.

The plaintiff, a Massachusetts corporation, having its place of business in Chelsea, is a manufacturer of radio loud speakers, and the defendant, a Delaware corporation, having a manufacturing plant in the city of Pawtucket in this state, is a manufacturer of copper wire products, among which are field coils used in the manufacture of plaintiff's radio loud speakers. These field coils consist of copper wire wound around a spool.   Such coils are the subject-matter of this action.   It appears from the evidence that they were not

manufactured at the defendant's plant in Pawtucket but at another plant of the defendant situated in Muskegon, Michigan.

It appears that the plaintiff did not know how these wire coils were manufactured by the defendant. It merely gave an order for the same to a Boston representative of the defendant company. This order was not contained in any single formal written contract but appears to have been the result of communications between the parties and perhaps as a result of some prior experimentation by the plaintiff with certain wire coils made by the defendant expressly for the plaintiff.

On January 17, 1933, plaintiff ordered by telegram certain sample coils to be tried out in a new design of a loud speaker which it had just developed. This order was for twenty-five sample coils described as "2900 ohms . . . 39 enameled." The measurement in ohms represented the electrical resistance of the coil when manufactured; the reference to enamel was to the insulation on the wire; and the figure 39 indicated the size or gauge of the wire. These coils were received by the plaintiff on January 23, 1933 and, upon being tested by the plaintiff, were found to be of #39 gauge wire and to have the electrical resistance of 2900 ohms, as specified, but on being used in the loud speakers they were found to be unsatisfactory. Upon this fact being discovered, the plaintiff sent a second telegram to defendant on January 25, 1933 with the same specifications, except that the wire should be gauge or size #38 instead of #39. No additional instructions as to their manufacture were sent to the defendant.

In response to this telegram defendant forwarded a new set of samples and assigned to this new type coil the number AS 2687, which was stenciled on the outside of each coil. These coils were tested by the plaintiff as the first lot had been and were found to have the specified resistance and the wire to measure #38 gauge. When they were used in the

speaker it was found that the operation of the speaker was very much improved. The plaintiff then decided to use this coil and so informed defendant.

Thereupon, on April 10, 1933, the defendant in accordance with its practice made a tracing of these specifications contained in this AS 2687 coil, a photostatic copy of a part of which tracing was introduced in evidence by the plaintiff as an exhibit in the following form.

> "Turns                               13,400
>
> Size Wire ♯38 (.0040″) P. E. (Wind with Minimum ♯37 Wire)
>
> \* \* \*                                  \* \* \*
>
> Resistance 2900 ohms plus or minus 5% at 68 degrees F.
>
> \* \* \*                                  \* \* \*
>
> Test Open, shorts, turns and resistance. Finish as per ES ♯38."

Defendant introduced testimony that in this tracing the phrase "Wind with Minimum ♯37" was not included when the tracing was first prepared but was added two years later after receipt of complaints from the plaintiff that the coils delivered were not of the proper gauge.

Thereafter large numbers of AS 2687 coils were ordered by the plaintiff, simply by that number, and they were delivered to it by the defendant. Plaintiff used these coils in manufacturing a large number of its loud speakers and later learned from its customers that the speakers were unsatisfactory. Upon examination of the coils in some of these unsatisfactory speakers it discovered that the wire on the coils was not ♯38 wire but ♯39. The plaintiff claims that as a result of these coils being of ♯39 wire the speakers were rendered unsatisfactory and that it has thereby suffered large losses.

The case appears to have been tried in the superior court by the plaintiff and defendant on two sharply conflicting

theories as to what was the proper meaning to be given to the wording of the final order of the plaintiff for a supply of these wire coils. The defendant's theory was that all it was required to do in compliance with plaintiff's order was to take ♯38 wire from its shelves and wind it on the coil in accordance with the specification in the tracing and that it was not concerned with the size of the wire after it was wound on the coil. The plaintiff's theory was that, in the light of its prior negotiations with the company and its tests with coils of ♯39 wire, which tests were known to the defendant, as well as from the reading of the order specified in the tracing itself, it meant and could only mean that the defendant was to supply plaintiff with field coils of ♯38 wire.

Evidence was introduced by each side to sustain its theory. Defendant introduced evidence tending to show that in winding the wire on the coils there was bound to be some reduction in the size. Plaintiff met this evidence by showing it was now manufacturing its own coils by winding ♯38 wire on the spools so that after it was wound on the spools it was still of the same size. Plaintiff also introduced evidence tending to show that by winding the wire in a certain way, the wire would be reduced in size, and a considerable amount of wire could be saved by the defendant.

Plaintiff introduced other evidence tending to show that at the time it ordered these coils it did not know how the defendant wound these coils and that the defendant stretched and reduced the size of the wire in so winding them. Further evidence was presented by the plaintiff that there is no one uniform way of winding wire on these coils. Much other evidence was introduced along the same line but enough has been mentioned to indicate that the case was tried in the superior court on these two conflicting theories.

The plaintiff contends here that on the evidence as presented a clear question of fact was presented for determination by the jury. It claims that the jury was prevented from

giving its unprejudiced judgment on the issue presented because of an alleged erroneous charge of the trial justice in the language following. "I therefore instruct you as a matter of law that where you find those words '38 wire', '38', 'that coils were to be made from wire 38' or some such language as that, it means that the defendant company was to take from its shelves wire which was then '38' and make the coils, of course, in a proper and workmanlike way, but that it does not mean that the wire in the coils after the coils were made up was to be '38'. They were to start with '38', they were to make them from '38' wire. . . .

"The plaintiff in order to make out a case here and to recover, must prove by a fair preponderance of evidence its contention and its main contention here is that '38' wire was not used. . . ."

This instruction clearly invaded the province of the jury and took from them their freedom to decide the issue upon all the evidence before them. What the contract was on the conflicting evidence in the case was not a question of law for the court. Defendant's counsel in his brief appears to admit this but contends that the real question on this point is whether the case should have been submitted to the jury on a claim broader than the plaintiff's declaration. He argues as follows: "Plaintiff's brief presents the argument that there is sufficient evidence to justify a jury in finding that the contract called for the delivery of coils with 38 gauge wire in place. This, for purposes of argument, defendant will concede. But this is not the controlling question. The appeal is disposed of without any consideration of that matter.

"The real question is whether the case should have been submitted to the jury on a claim broader than that made in the declaration. The declaration stated a claim based on a promise that coils be made from 38 gauge wire. Plaintiff introduced evidence which it claimed tended to show a

promise that the wire would be 38 gauge when in place in the coils."

In support of this contention defendant discusses the phraseology of certain selected parts of the plaintiff's declaration and seeks to show that the plaintiff has very narrowly declared its cause of action to be that the defendant did not make these field coils *from* ♯38 wire as ordered. In developing this point, it insists that the language used by the plaintiff in drawing its declaration can mean only this, and can not mean that the defendant did not make the coils *of* ♯38 wire as shown by the plaintiff's evidence.

The defendant then from this premise concludes that the plaintiff is restricted to the issue as thus raised by its own language in its declaration; and that, therefore, the charge as given properly restricted the jury to the narrow issue whether the defendant actually used ♯38 wire in the winding of these coils. Defendant cites numerous authorities to support this conclusion. With these authorities we need not be concerned, as we reject the premise upon which the defendant's conclusion rests.

A fair reading of the plaintiff's declaration as a whole, not limited to any selected part or parts excerpted from the context, has convinced us that the plaintiff has not narrowly limited itself as the defendant urges above. On the contrary, we are of the opinion that the declaration taken as a whole, together with the other pleadings in the case, clearly presented the issue contended for by the plaintiff, so that the evidence which was introduced was properly before the jury. It was the province of the jury, under proper instructions by the court, to determine from the conflicting evidence in the case what was the contract between the parties and whether it was breached by the defendant. The trial justice was therefore in error in charging the jury in the language above quoted.

Plaintiff's exception to the portion of the charge of the trial justice above quoted is sustained and, as the sustaining

of this exception will require that the case be tried again, it is not necessary to pass upon plaintiff's other exceptions.

The case is accordingly remitted to the superior court for a new trial.

*Tillinghast, Collins & Tanner,* for plaintiff.

*Ira Lloyd Letts, Alan P. Cusick,* for defendant.